**Loretta FABRICANT, on behalf of herself and all others similarly situated, Plaintiffs,**

v.

**SEARS ROEBUCK, et al., Defendant.**

**No. 98–1281–CIV–NESBITT.**

United States District Court, S.D. Florida.

June 29, 2001.

Michael A. Hanzman, Alan Rolnick, Keith E. Hope, Hanzman, Criden, Chaykin & Rolnick, P.A., Coral Gables, FL, Robert Ader, Law Offices of Robert Ader, Robert Hertzberg, Law Offices of Robert Hertzberg, Miami, FL, for plaintiff.

William F. Hamilton, Holland & Knight LLP, Tampa, FL, James C. Schroeder, Mayer Brown & Platt, Chicago, IL, for defendant.

## MEMORANDUM OPINION & ORDER ON CLASS CERTIFICATION

NESBITT, District Judge.

This cause comes before the Court upon Plaintiff's Renewed Motion for Class Certification (D.E. # 217) filed August 1, 2000. The Court beard oral argument on this Motion on February 5, 2001 (D.E. # 279). The Court has considered the motion, the response, the reply and the pertinent portions of the record.

### BACKGROUND

This case concerns the Defendants' practice of marketing a package of "credit life, disability, unemployment and leave of absence insurance coverage" in connection with the Sears Credit Card. Plaintiff's Second Amended Class Action Complaint alleges Defendants sold this insurance to her and other cardholders in violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq. and Florida law, including Florida Statutes §§ 627.679 and 624.15. Plaintiff seeks class action under TILA for statutory damages, actual damages and declaratory relief, as well as attorneys fees, restitution under Florida law (refund of premiums plus interest), and injunctive relief to prevent future violations. The essence of Plaintiff's claims is that Defendants marketed and sold this insurance to thousands of consumers, using standard, uniform applications that failed to make sufficient disclosures and to obtain appropriate consent in violation of TILA and Florida law. Plaintiff also contends that the Florida law violations rendered the contracts in Florida illegal and void, requiring disgorgement of profits.

Plaintiff seeks class action status on behalf of three classes. First, a national class of all consumers who signed up for SCPP insurance by in-store application since June 5, 1997,[1] *and* whose accounts are not in default ("TILA class"), *and* who have not received benefits in excess of premiums paid. Second, a class of all persons who signed up for SCPP insurance in Florida since June 5, 1994

---

1. Plaintiff's original class definition sought to include all persons who were sent a bill imposing a charge for SCPP insurance since June 1997; at oral argument, Plaintiff agreed to include only those persons who signed up for SCPP insurance within a year of the filing of the complaint. Transcript of February 5, 2000 Hearing (D.E. # 379) at 68.

*and* whose accounts are not in default ("Florida class") *and* who have not received benefits in excess of premiums paid. The third class seeks declaratory and equitable relief on behalf of those persons as defined by the Florida class.[2]

## DISCUSSION

To maintain a class action, Plaintiff bears the burden of showing that the proposed class satisfies the four prerequisites of Federal Rule of Civil Procedure Rule 23(a). Rule 23(a) provides that one or more members may sue on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable ("numerosity"), (2) there are questions of law or fact common to the class ("commonality"), (3) the claims of the representative are typical of the claims of the class ("typicality"), and (4) the representative parties must fairly and adequately protect the interests of the class ("adequacy"). Fed.R.Civ.P. Rule 23(a). If the prerequisites are met, then the action must satisfy one of the three provisions of Rule 23(b). In making this determination, the Court must take the factual allegations of the Complaint as true and examine only whether those factual allegations meet the requirements of Rule 23.

### A. Rule 23(a) Prerequisites

#### 1. Numerosity

■ The first requirement is that the class is so numerous that joinder is impracticable, not impossible. Rule 23(a)(1); *see Kreuzfeld, A.G. v. Carnehammar*, 138 F.R.D. 594, 599 (S.D.Fla.1991). There is no definite standard as to the size of a given class, and plaintiff's estimate need only be reasonable. *See Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir.1986). Classes as small as 25 have been certified. *Kreuzfeld*, 138 F.R.D. at 599 (certifying class of 130). Plaintiff Fabricant estimates that thousands of persons are potential members of this class. As an example. Plaintiff states that there were 158,000 of active Florida SCPP accounts when the complaint was filed. Defen-

dants do not contest numerosity and it unquestionably exists.

#### 2. Commonality

■ Rule 23(a)(2) requires the presence of at least *one* issue affecting all or a significant number of proposed class members. *Kreuzfeld*, 138 F.R.D. at 599. Where, as here, the allegations involve a common course of conduct by the defendant, class members claims involve common questions of law or fact. *See Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir.1983). This case involves substantial common questions of law and fact with respect to (1) the standardized forms, procedures and disclosures made or required and (2) the legal effect of those disclosures, as alleged in paragraph 19 of the Plaintiff's complaint. Accordingly, the commonality element is satisfied.

#### 3. Typicality

■ Rule 23(a)(3) requires that the representative's claims or defenses are typical of the claims or defenses of the class. In other words, typicality requires a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class. *Kornberg v. Carnival Cruise Lines*, 741 F.2d 1332, 1337 (11th Cir. 1984). The class representative's claims are typical if her claim and those of the class arise from the same event or pattern or practice and are based on the same legal theory. *Id.; Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 315 (S.D.Fla.1996) (explaining that typicality is established if the named plaintiff's claims arose from the same practice or course of conduct by the same defendant and are based on the same legal theory).

■ Plaintiff alleges that she and the remainder of the proposed class received identical disclosures. *See, e.g.*, Complaint ¶ 28 (standard application forms identical), ¶ 35 (defendants failed to provide written disclosure concerning option of purchasing insurance from other sources, concerning cost of property insurance, informing that purchase

---

**2.** Plaintiff originally sought injunctive relief on behalf of those defined by the TILA class as well, but has since withdrawn that request. *See* Plain-

tiff's Supplemental Memorandum of Law (D.E. # 404) at 1 & n. 2.

of insurance was not factor in approval of credit, etc). Her TILA claims are based on the same allegedly inadequate disclosures as those received by the rest of the class. *See, e.g.*, Complaint ¶ 29 (standard application forms failed to make proper disclosures), (violations of 15 U.S.C. §§ 1605(b), 1605(c), 1637(a), 1637(b), and various portions of Regulation Z), ¶ 39 (periodic account statements violated TILA). Accordingly, Fabricant's TILA claims are typical of the rest of the class.

■ Defendants contend that typicality is not met because Fabricant is subject to unique defenses.[3] Typicality is not defeated by specific defenses or counterclaims to the named plaintiff's claim. *See Ingram v. Joe Conrad Chevrolet*, 90 F.R.D. 129, 131 (E.D.Ky.1981); *see also Chandler v. Southwest Jeep–Eagle*, 162 F.R.D. 302, 308 (N.D.Ill.1995) (defense); *Oneida Indian Nation v. New York*, 85 F.R.D. 701 (N.D.N.Y. 1980) (counterclaim). Even so, Defendant's objections apply only to plaintiff's actual damage claims. It is black letter law in this circuit that, with respect to statutory damages, "once the court finds a violation, no matter how technical, it has no discretion with respect to imposition of liability." *Grant v. Imperial Motors*, 539 F.2d 506, 510 (5th Cir.1976). Thus, Defendants' unsupported assertions that Fabricant is subject to unique defenses does not undermine her typicality for TILA claims.

Defendants further contend that because Plaintiff testified she did not read the disclosures, she is not a suitable class representative for actual damages because she cannot prove reliance, and therefore, actual damages. Even if Fabricant herself is precluded from recovering actual damages, such preclusion does not render her claim atypical. *Brink v. First Credit Resources*, 185 F.R.D. 567 (D.Ariz.1999) (where class representative had no actual damages, claim not atypical

where claim based on same course of conduct and required proof of same elements). As Plaintiff's counsel explained, in response to this Court's inquiry about splitting the TILA class into a statutory damages subclass and an actual damages subclass, the class seeking actual damages and statutory damages are "the same ... The class is the people who have timely TILA claims." Transcript of Hearing on February 5, 2000 (D.E. # 379), at 51. The only difference between those persons who will eventually receive actual damages in addition to statutory damages is whether they may prove an additional element of reliance. *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir.2001).[4] Accordingly, Plaintiff Fabricant is typical although she may not be entitled to receive actual damages for her own claim.

Similarly, Defendants cite nothing to support their assertion that she may be precluded from seeking restitution for an illegal contract under Florida. The only possible objection, which the Court can conceive, to her typicality for the Florida claims would be if she was *in pari delicto*. *See, e.g., Castro v. Sangles*, 637 So.2d 989, 991 (Fla.Dist.Ct.App. 1994) (homeowner who improperly secured building contract for contractor in violation of law precluded from restitution); *Inter–Continental Promotions, Inc. v. Miami Beach First Nat'l Bank*, 441 F.2d 1356, 1361 (5th Cir.1971) (participants in a boxing match who knowingly engaged in "subterfuge" to bring event within statutory exception, barred from recovery against promoters of illegal fight). As Defendants make no such contention, typicality is met for the Florida class.

*4. Adequacy*

■ Rule 23(a)(4)'s adequacy requirement has two components: (1) the class representative has no interests antagonistic to the class and (2) class counsel possesses the competence to undertake the litigation. *Kirkpat-*

---

**3.** Defendants also contend that Fabricant is not typical because the actual damages claims involve highly individualized issues; however, this argument more directly addresses the Rule 23(b)(3) predominance requirement and will be discussed there.

**4.** Membership in an "actual damages" subclass would be identical to membership in the "statutory damages" subclass as each person entitled to receive actual damages is also entitled to receive a share of the statutory damages. The precise membership in the "actual damages" subclass would not be known until each member individually proved his detrimental reliance.

*rick v. J.C. Bradford & Co.,* 827 F.2d 718, 726–28 (11th Cir.1987). Plaintiff's counsel are experienced in class action litigation. Defendants object only to Fabricant's adequacy as class representative, contending that (1) other potential members of the class may not agree with this litigation and (2) Fabricant does not believe in the claims she brings.[5]

■ First, Plaintiff does not need to show that other potential class members want to be part of the class or desire the relief sought. *See In re Potash Antitrust Litig.,* 159 F.R.D. 682, 692 (D.Minn.1995) ("A court is not authorized to dismiss a class action based upon a substantive legal claim merely because some members of the class prefer to leave the violation unremedied."); *Joseph v. GMC,* 109 F.R.D. 635, 640 (D.Colo.1986) (explaining that the fact that some class members do not want to pursue claims has no bearing on class certification). The monetary relief sought by Plaintiff on behalf of the class is sought under Rule 23(b)(3). Rule 23(c)(2) requires that any class action certified under Rule 23(b)(3) allow any potential class members the opportunity to opt out. If any potential class members do not wish to be part of this class, they may request exclusion. The possibility that some other unidentified class members might request exclusion from this action does not mean Fabricant is not an adequate representative for the rest of the class.

Next, Defendants, without citation, assert Fabricant's testimony about the meaning of "optional" make her an unfit class representative. The portions of Fabricant's deposition provided by Plaintiff, however, establish that she testified that she did not "know[ ] what optional ... meant" with respect to the Credit Protection Plan. Deposition of Loretta Fabricant at 122. This testimony only illustrates one of the disputes in this litigation:

whether Defendants' disclosures were sufficient. Even if this is damaging testimony elicited through skillful cross-examination, that is not enough to suggest that Fabricant is not an adequate class representative. *See Dorfman v. First Boston Corp.,* 62 F.R.D. 466, 473 (E.D.Pa.1973) (finding the fact that plaintiff testified in her deposition that she was "satisfied with her investment" in securities fraud case did not make her an inadequate class representative). Accordingly, the Court finds that both counsel and the proposed class representative Fabricant satisfy the adequacy requirement.

### B. Rule 23(b) Requirements

Rule 23(b) allows the action to be maintained as a class action if the Rule 23(a) prerequisites are satisfied, and one of the three requirements of Rule 23(b) are satisfied. Here, Plaintiff seeks certification of three classes, one under Rule 23(b)(2) and two under Rule 23(b)(3).

#### 1. Rule 23(b)(2) Class

Rule 23(b)(2) allows classes to be certified to order final injunctive or declaratory relief where defendants have "acted or refused to act on grounds generally applicable to the class." Fed.R.Civ.P. Rule 23(b)(2). Plaintiff seeks certification of a class under Rule 23(b)(2) because she seeks injunctive relief to force Defendants' to comply with the applicable Florida statutes in the future. Defendants offer three arguments against certification of such a class.

■ First, Defendants object because Plaintiff seeks primarily monetary relief.[6] A court, however, may certify multiple classes: a class for injunctive relief under Rule 23(b)(2) and a damages class under Rule 23(b)(3). *Davis v. Southern Bell,* 1993 WL

---

5. Defendants also objected to Fabricant's adequacy as a class representative by arguing that the other class members will want to control their defense against Defendant's counterclaims. This objection is no longer valid as the Court dismissed all of Defendants' counterclaims.

6. Defendants suggest that the comments to Rule 23(b)(2) imply limiting the rule to Civil Rights cases. While the comments use illustrations

from "various civil rights cases," the comments emphasize that "[s]ubdivision (b)(2) is *not* limited to civil-rights cases" and as examples suggest applications in antitrust, price-discrimination and patent infringement cases. Fed.R.Civ.P. Rule 23(b)(2) comments; *see also* Newberg on Class Actions § 4.12, at 4–40 (section entitled "Rule 23(b)(2) Not Limited to Civil Rights Cases").

593999, *7 (S.D.Fla.1993), *reconsideration granted on other grounds,* 158 F.R.D. 173 (S.D.Fla.1994). Plaintiff seeks injunctive relief to require Defendants to change their marketing practices. Thus, the equitable relief differs substantially from the damages sought by Plaintiff.[7]

■ The Seventh Circuit recently considered how courts should proceed with class actions that seek both monetary damages and equitable relief when the monetary damages are not merely incidental to the equitable relief. *Lemon v. International Union of Operating Engineers,* 216 F.3d 577 (7th Cir. 2000). In such cases, the district court may proceed on one of three alternatives: (1) certify the class under Rule 23(b)(3) for all proceedings, or (2) certify a Rule 23(b)(2) class for the portion of the case seeking equitable relief and a Rule 23(b)(3) class for the portion of the case seeking damages or (3) certifying a class under Rule 23(b)(2) for monetary and equitable remedies, but exercising its plenary authority under Rules 23(d)(2) and 23(d)(5) to provide all class members with notice and an opportunity to opt out. *Id.* at 581–82. Here, the Court is exercising the second option of "divided certification;" however, as the Rule 23(b)(2) class overlaps exactly with the Rule 23(b)(3) Florida damages class, the Rule 23(b)(2) class will also receive notice.

Defendants also contend that Fabricant seeks to rescind all of the SCPP contracts, without notice or ability to opt out. This simply is not the injunctive relief Fabricant seeks. The Rule 23(b)(2) class seeks an order that Defendants violated Florida law with respect to the sale of this insurance and an order requiring them to comply. Specifically, Plaintiff seeks an injunction to force Defendants to make proper disclosures under Florida law, and to comply with Florida insurance licensing and approval requirements. Requesting a declaration that Defendants presently are violating the law and an injunction forcing defendants to comply with the law is precisely the type of class appropriate for class certification under Rule

23(b)(2). *See Morgan v. Laborers Pension Trust Fund,* 81 F.R.D. 669, 681 (N.D.Cal. 1979). Accordingly, Plaintiff's request for declaratory and injunctive relief should be certified on behalf of a class.

Finally, Defendants contend that Fabricant lacks standing and cannot show she has or will suffer irreparable harm for which there is no remedy at law. To the extent that these objections attack the merits of the claim for injunctive relief, they are inappropriate on a motion for class certification. *See Johnson v. American Credit Co.,* 581 F.2d 526, 532 (5th Cir.1978). Plaintiff has alleged that she, as well as the rest of the proposed class, have Sears credit cards and SCPP insurance; consequently, any future charges would be similarly affected by the alleged violations. As the injunctive relief seeks prevention of future harm, while the damages seek to compensate class members for past harm, the injunction and the damages remedy separate harms. Accordingly, certifying a class for injunctive and declaratory relief is appropriate.

### 2. *Rule 23(b)(3) Classes*

Rule 23(b)(3) allows certification of a class when common questions of law or fact predominate ("predominance") and the class action is superior to other available methods for fair and efficient adjudication of the controversy ("superiority"). Fed.R.Civ.P. Rule 23(b)(3). Plaintiff Fabricant seeks certification of two overlapping classes under Rule 23(b)(3): (1) a nationwide class of persons from June 1997 through October 1998 for violations of TILA ("TILA class") and (2) a class of Florida purchasers for violations of Florida law ("Florida class"). Defendants challenge certification of either class because (1) common issues of law or fact do not predominate and (2) a class action is not a superior method of adjudication.

#### a. *Predominance*

Rule 23(b)(3) requires only that common questions predominate over individual questions, not that all questions of law or fact

---

7. Even if the relief overlapped, nothing prevents Plaintiff from seeking alternative remedies, seeking damages or declaratory or injunctive relief.

*See, e.g., Western Geophysical Co. v. Bolt Assocs.,* 440 F.2d 765, 771 (2d Cir.1971).

need to be common. *Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y.1981).

### (i) TILA Class

 "Truth in Lending class actions lend themselves readily to a finding that common questions predominate over individual ones." Newburg on Class Actions § 21.11, at 21–22. The core legal and factual issues relating to liability and statutory damages here are not merely common, but identical. Plaintiff alleges that Defendant provided the same disclosures to all class members and that those disclosures violated TILA. These common issues predominate.

 With respect to the predominance requirement, Defendants challenge only whether a claim for actual damages requires denial of class certification.[8] In the context of a TILA violation—particularly as proof of detrimental reliance does not establish liability, but merely plaintiff's entitlement to actual damages—there is no reason to deny class certification as to liability. Rule 23 clearly contemplates certifying class actions on certain issues. Fed.R.Civ.P. Rule 23(c)(4).

Numerous courts have certified TILA actual damages class actions on the issue of liability to resolve common questions. *See, e.g., Hill v. Galaxy Telecom,* 184 F.R.D. 82, 87 (N.D.Miss.1999); *Sanchez v. Lowell Lebermann, Inc.,* 79 F.R.D. 21 (W.D.Tex.1978); *McCoy v. Salem Mortgage Co.,* 74 F.R.D. 8, 12 (E.D.Mich.1976); *see also Johnson v. Steven Simms Subaru,* No. 92–C–6355, 1993 WL 761231, 1993 U.S. Dist. LEXIS 8078 (N.D.Ill. June 9, 1993) (explaining that while some courts require reliance for actual damages, none stand for the proposition that a

claim for "actual damages" defeats class certification to resolve the issue of liability). If Plaintiffs are able to establish liability, the Court may either appoint a master to resolve actual damages or merely allow class members to bring individual actions with the benefit of a res judicata finding of liability.[9] *McCoy,* 74 F.R.D. at 13–14; *see Davis v. Southern Bell Tel.,* No. 89–2839, 1994 WL 912242 *31, 1994 U.S. Dist. LEXIS 13257, *94 (S.D.Fla. Feb. 1, 1994) (certifying liability class where fraud perpetrated by use of similar written misrepresentations); *see also* Note, *Utilizing Statistics & Bellwether Trials in Mass Torts,* 8 Wm. & Mary Bill Rts. J. 199, 236 (1999) (advocating use of and explaining the efficiency of certifying a class to resolve liability issues, followed by mini-trials to resolve individualized issues, rather than full and separate individual trials). Accordingly, the potential recovery of actual damages by some class members in subsequent proceedings does not defeat predominance.

### (ii) Florida Class

Defendants' only objection to the predominance of certifying the Florida class is based on a now dismissed counterclaim. The central legal issue concerning the Florida class is based on an allegation that insurance policies were sold in violation of Florida law, are void as a matter of public policy and the class is entitled to a refund of premiums paid. As with the TILA class, these common issues predominate and are appropriate for certification.

### b. Superiority

 In determining superiority, Rule 23(b)(3) recommends that the Court consider four factors: (A) the interest in the class in

---

8. Defendants also challenged predominance because of their "compulsory counterclaims." As those counterclaims have been dismissed under Rule 12(b)(6), such objection is moot. Even so, it would be error to deny class certification based on hypothetical or potential counterclaims. *See Heaven v. Trust Co. Bank,* 118 F.3d 735, 738 (11th Cir.1997) (approving the rationale of *Roper v. Consurve, Inc.,* 578 F.2d 1106 (5th Cir.1978), *aff'd,* 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980), which determined it was error for district court to base denial of class certification on mere possibility of defendant filing counterclaims).

9. Detrimental reliance does not require a rigorous standard of proof. *See, e.g., Shawmut Bank v. Goodrich,* 999 F.2d 22, 25 (1st Cir.1993) (explaining that if a financial statement is materially false, then a showing that one "relied" upon it arguably requires no more than that the person took it into account and gave it weight); *In re Sigur,* 169 B.R. 366, 367 (E.D.La.1994) ("Actual reliance does not require a rigorous standard of proof"); *In re Sanders,* 110 B.R. 328, 331 (M.D.Tenn.1989) (finding that sufficient proof of reliance consisted of unsupported testimony that they would not have entered into the transaction if the inaccuracies had been known).

individually controlling the prosecution of separate actions, (B) the extent and nature of any litigation concerning the controversy already commenced by members of the class, (C) the desirability of concentrating the litigation of the claims in a particular forum, and (D) the difficulties likely to be encountered in the management of a class action. In determining superiority, the "inability of the poor or uninformed to enforce their rights" and "the improbability that large numbers of class members would possess the initiative to litigate individually" are considerations. *Goldman v. First Nat'l Bank of Chicago*, 532 F.2d 10, 15 (7th Cir.1976).

The complicated nature of this action, and TILA actions in general, as evidenced by the myriad of issues raised by both parties in this case, suggests not only that class members have little interest in, but also are unlikely to, initiate or control individual litigation.[10] The Court is aware of no other pending litigation concerning this controversy. Indeed, Defendants have advised the Court that the only other known action was voluntarily dismissed with prejudice upon joint stipulation by the parties. *See* Notice of Voluntary Dismissal of Other Pending Action (D.E. # 176). Concentrating the litigation in this forum will achieve the primary objective of class actions—namely, achieving economies of time, effort and expense, assuring uniformity and avoiding repetitive actions.

### (i) TILA Class

#### Statutory Damages

Defendants' objection to the manageability of the TILA class is based upon the "hypertechnical" nature of the violations. TILA is a strict liability statute with respect to imposition of statutory damages: "once a court finds a violation, *no matter how technical,* it has no discretion with respect to the imposition of liability." *Grant v. Imperial Motors*, 539 F.2d 506, 510 (5th Cir.1976) (emphasis added). The only case cited by Defendants, *Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371 (11th Cir.1984), involved a quintessen-

tial technical violation, the failure to print the disclosure in large enough type. *Id.* at 1379. Such a technical violation differs from the violations plaintiff alleges here concerning Defendants failure to make substantive disclosures. Even so, the *Shroder* court explained that it would not have been an abuse of discretion for the district court to certify the class, even involving a technical violation. *Id.* Accordingly, the Court finds no impediments to the manageability of the TILA class and finds a class action will be superior to individual actions.

#### Actual Damages

Since the Eleventh Circuit's *en banc* decision in *Turner v. Beneficial Corp.*, 242 F.3d 1023 (11th Cir.2001), Defendants argue that class certification on any issue concerning actual damages is not possible and Plaintiff acquiesces in seeking certification of a TILA class only for statutory damages and declaratory relief. *See* Plaintiff's Supplemental Memorandum of Law (D.E. # 404); Defendants' Notice of Filing Supplemental Authority (D.E. # 402). Both parties seemingly assume that a class member could bring a later case for actual damages after liability for statutory damages was established here. The Court, however, must consider the res judicata effect of a judgment on statutory damages on absentee class members' ability to later seek actual damages.

All members of the class are bound by the res judicata effect of the judgment in a class action. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir.1987). If a previous judgment is valid, final, on the merits, and on the same cause of action, the claim extinguishes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. Restatement (Second) Judgments § 24; *see Hayes v. Solomon*, 597 F.2d 958, 982 (5th Cir.1982). "This application of the doctrine of res judicata operates to prevent the splitting of a single course of action and the use of several grounds for recovery

---

**10.** Defendant's only objection to this first consideration concerns plaintiff's ability to control the defense of counterclaims. As all counterclaims have been dismissed, this objection is no longer relevant.

under the same action as the basis for separate suits." *Hayes,* 597 F.2d at 982.

The test [11] for comparing causes of action is whether "the primary right and duty and the delict or wrong are the same." *Seaboard Coast Line R.R. Co. v. Gulf Oil Corp.,* 409 F.2d 879, 881 (5th Cir.1969). TILA creates a single cause of action for violating the disclosure requirements, but provides two cumulative elements of damage: actual and statutory. *Cf. Shelley v. AmSouth Bank,* 2000 WL 1121778, *15 (S.D.Ala. July 24, 2000) (interpreting the Truth in Savings Act, which is patterned after TILA). If this Court were to certify the class to award statutory damages only, a class member's later claim for actual damages would arise out of the same wrong for the purposes of res judicata.

 The Eleventh Circuit has explained that "[w]hen the plaintiff itself splits the cause of action to suit its own purposes, we find that damages are damages, regardless of amount, for the purposes of res judicata." *Aquatherm Industries, Inc. v. Florida Power & Light,* 84 F.3d 1388, 1395 (11th Cir.1996). The *Aquatherm* court therefore concluded that the plaintiff's prior action seeking compensatory damages precluded the plaintiff from seeking treble damages and lost profits in a later suit. *Id.* In short, res judicata bars a plaintiff's later claim for additional damages, not sought in the first action, that arose out of the same cause of action. Restatement (Second) Judgments § 25(b); *see, e.g., Casto v. Arkansas–Louisiana Gas Co.,* 597 F.2d 1323, 1324–25 (10th Cir.1979) (finding that first action for wife's personal injuries and joint property damage claims barred second claim for husband's loss of consortium

claim). Therefore, here too, if this Court were to certify the class for statutory damages only, res judicata would bar a class member's claim for actual damages.[12]

 The only other court to consider whether resolution of statutory damage claims would bar subsequent assertion of actual damages concluded that "[p]roceeding as a class action exclusively for recovery of statutory damages effectively eliminates any claim for actual damages by the class members, not merely in this lawsuit but in any individual lawsuit as well." *Shelley v. AmSouth Bank,* No. Civ.A. 97–1170–RV–C, 2000 WL 1121778, *15 (S.D.Ala. July 24, 2000). There are, however, several exceptions—ignored by the *Shelley* court—that the Court may utilize to prevent res judicata. *See* Restatement (Second) Judgments § 26. First, the res judicata which prohibits splitting a cause of action "applies only to claims then capable of recovery' in the first action." *Hayes,* 597 F.2d at 984 (quoting *United States v. Pan–American Petroleum Co.,* 55 F.2d 753, 782 (9th Cir.1932)). Second, the Court may "expressly reserve[ ] the plaintiff's right to maintain the second action." Restatement (Second) Judgments § 26(1)(b).[13] As the issue of reliance cannot be tried on a class-wide basis, certifying the class for the issue of liability only with respect to actual damages would then prevent application of res judicata as to actual damages. In the event that res judicata would prevent a determination of actual damages in any other forum, this Court expressly reserves the right of class members to seek actual damages upon proof of reliance.[14] If

11. In actions involving federal questions, federal law governs this issue. *Hayes,* 597 F.2d at 982.

12. The fact that the class seeks declaratory relief *in addition to* money damages does not change this analysis. A prior action that sought *only* declaratory and injunctive relief does not bar a later claim for damages even though the damages were matured at the time of the declaratory action. *Herron v. Beck,* 693 F.2d 125, 127 (11th Cir.1982); *Bogard v. Cook,* 586 F.2d 399, 408 (5th Cir.1978); *see also* Restatement (Second) Judgments § 33 & comments b & c. Seeking statutory damages along with the declaratory relief, however, then triggers the doctrine of merger, whereby plaintiff may not seek additional remedies arising from the same claim. *See*

Restatement (Second) Judgments § 18; *cf. Herron,* 693 F.2d at 127; *Bogard,* 586 F.2d at 408.

13. *See Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 985 F.2d 1067, 1070 (11th Cir.1993) (applying Restatement (Second) of Judgments § 26).

14. Pursuant to the Restatement (Second) of Judgments, this Court could choose to reserve the right of class members to present a full actual damages claim (i.e. liability and damages) at a later time. *See Kachler v. Taylor,* 849 F.Supp. 1503, 1518–19 (M.D.Ala.1994). That would produce the possibility, at least, that every single claim would have be tried individually on the

Plaintiffs prove a disclosure violation, class members who can prove detrimental reliance may then utilize the judgment here to assert a claim for actual damages either in this Court or another forum with the benefit of a res judicata determination of liability and, therefore, be required only to prove detrimental reliance in order to obtain actual damages. Accordingly, the Court concludes that the most efficient and far superior method of resolving the actual damages claim is to certify the class as to liability with respect to actual damages, as well as statutory damages.

### (ii) Florida Class

■ Defendants first object to certifying the Florida class contending that Plaintiff inappropriately seeks class-wide recission of all the SCPP policies. In Count III, Plaintiff does not seek recission of the contract, nor does she assert a private right of action under the Florida Insurance statutes. Rather, plaintiff alleges a claim for restitution as the innocent party to an illegal contract, void ab initio under Florida law. See Order On Motion for Certification (D.E. # 364), January 29, 2001, at 4–5. At oral argument on this motion, Defendants agreed that an illegal contract consisted of "something that is officially prohibited; to contract for something that the subject matter is impermissible" but urged that the sale of credit insurance was not illegal in the state of Florida. Transcript (D.E. # 379) at 87. Defendants contend that the mere violation of "some obscure provision of Florida that is not important to anybody" does not warrant these contracts being declared illegal, as Plaintiff's true remedy is recission, not restitution. See id. at 88–90. As recission involves individualized questions, Defendants then conclude that the superiority prong is not met and the Florida class should not be certified.

Florida law is well-settled that where the law requires licenses to conduct business, the contracts by the unlicensed to perform licensed services are illegal and void. Vista Designs v. Silverman, 774 So.2d 884, 885 (Fla.Dist.Ct.App.2001) (requiring unlicensed attorney to disgorge the funds received from client through a contract that was void ab initio due to illegality); Steinberg v. Brickell Station Towers, 625 So.2d 848, 849 (Fla.Dist. Ct.App.1993) (finding contract by unlicensed mortgage broker illegal and void); see also In re Ripon City, 102 F. 176, 183 (5th Cir. 1900) ("any contract which undertakes . . . to put in charge . . . any unlicensed person—no matter how well qualified otherwise . . .—ought to be held void"). See generally Annot., Recovery Back of Money Paid to Unlicensed Person Required by Law to Have Occupational or Business License or Permit to Make Contract, 74 A.L.R.3d 637 (1976).

> The broad basis for the doctrine that contracts of certain unlicensed persons are unenforceable is that the courts should not lend their aid to the enforcement of contracts where performance would tend to deprive the public of the benefits of regulatory measures.

Cooper v. Paris, 413 So.2d 772, 773 (Fla.Dist. Ct.App.1982) (citing Williston on Contracts, § 1765, p. 247). This general rule is subject to the exception that where the parties are not in pari delicto, the innocent party may recover. Id. Thus, Plaintiff correctly seeks restitution, not recission, and nothing suggests that this Court may not certify a class seeking restitution on the same basis—that all the contracts are void ab initio based on a violation of the same public policy.

Defendants' final objection is that the claims of the Florida class are too novel for class certification. In support of this argument, Defendants cite a handful of cases that have decided not to certify mass tort personal injury actions as class actions. There is a historical distrust of certifying personal injury actions because of highly individualized questions of causation, liability resulting from negligence over extended periods of time and the idea that personal injuries give rise to a greater right of control than actions for economic injury. See Note, Utilizing Statistics and Bellwether Trials in Mass Torts, 8 Wm.

---

issue of liability and individual reliance. As determination of liability (i.e. the disclosure violation) is identical for both statutory and actual damages, that would require re-litigation of iden-

tical issues. Requiring or allowing re-litigation on the issue of liability for actual damages would undermine the superiority of resolving the TILA statutory claims on a class-wide basis.

& Mary Bill of Rts. J. 199, 206–07 (1999). Even so, a number of courts have certified such cases. *Id.* at 207–08. The law regarding restitution under illegal contracts is hardly novel. *See* Order of January 29, 2001, at 4. Accordingly, nothing prevents these claims from being tried as a class action.

### CONCLUSION

Accordingly, the Court concludes that the requirements for a class action certification pursuant to Fed.R.Civ.P. Rule 23 have been met and it is hereby **ORDERED** and **ADJUDGED** that Plaintiff's Renewed Motion for Class Certification (D.E. # 217) is **GRANTED**. It is further **ORDERED** and **ADJUDGED** that classes are certified according to the following class definitions:

1. For claims alleged in Count I and II for violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq ("TILA class"), a class of persons certified under Fed. R.Civ.P. Rule 23(b)(3) consisting of

All Sears accountholders purchasing SCPP insurance sold by Defendants

(a) who signed up SCPP insurance by in-store application since June 5, 1997 through October 1998; *and*

(b) who have not received benefits in excess of premiums paid; *and*

(c) whose accounts are not in default by the close of the opt-out period.

For statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(B), for declaratory judgment, and to resolve issues of liability regarding actual damages available pursuant to 15 U.S.C. § 1640(a)(1).

2. For claims alleged in Count III for violations of Florida law ("Florida class"), a class of persons certified under Fed. R.Civ.P. Rule 23(b)(3) consisting of

All Sears accountholders purchasing SCPP insurance from the Defendants in the state of Florida from June 5, 1994 to the present

(a) whose accounts are not in default *and*

(b) who have not received benefits in excess of premiums paid.

3. For declaratory and injunctive relief sought in Count IV to require Defendants to comply with Fla. Stat. § 627.679 and to comply with §§ 624.605(1)(j), 626.321, 627.682, a class of persons certified under Fed.R.Civ.P. Rule 23(b)(2) consisting of

All Sears accountholders who are members of the Florida class as defined above.

It is further **ORDERED** and **ADJUDGED** that Plaintiff, after consultation with counsel for Defendants, shall submit a proposed notice to the class, consistent with Fed.R.Civ.P. Rule 23(c)(2), for approval of this Court no later than 20 days following entry of this Order.